09-1437-cr
USA v. Fuller

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2009

(Argued: May 26, 2010          Decided: November 30, 2010)

Docket No. 09-1437-cr

-----------------------------------------------------------------X

UNITED STATES OF AMERICA,

              Appellee,

          - v. -

ROSS A. FULLER, III,

              Defendant-Appellant.

-----------------------------------------------------------------X

Before:   McLAUGHLIN, STRAUB, RAGGI, Circuit Judges.

Defendant-Appellant Ross A. Fuller, III, ("Fuller") appeals from a judgment of conviction entered in the United States District Court for the Northern District of New York (Scullin, J.), following a conditional guilty plea to a violation of 18 U.S.C. § 2250, the criminal enforcement provision of the federal Sex Offender Registration and Notification Act ("SORNA" or the "Act"), 42 U.S.C. § 16901 et seq. On appeal, Fuller argues, principally, that SORNA is not applicable to individuals, like Fuller, whose predicate sex offense convictions predate SORNA's enactment and whose interstate travel and failure to register

occurred after SORNA's enactment but prior to the U.S. Attorney General's interim ruling that SORNA applies to all sex offenders regardless of when convicted. We disagree, and hold that SORNA applied upon enactment to sex offenders whose predicate sex offense convictions predate SORNA. Fuller also argues that a conviction under SORNA requires a showing of specific intent to violate the Act's requirements. Again, we disagree, and hold that violation of SORNA's criminal enforcement provision is a general intent crime. Accordingly, the judgment of the district court is AFFIRMED.

BRENDA K. SANNES, Assistant United States Attorney (Richard S. Hartunian, United States Attorney for the Northern District of New York; Lisa M. Fletcher, Assistant United States Attorney), United States Attorney's Office for the Northern District of New York, Syracuse, New York, for Appellee.

JAMES P. EGAN (Alexander Bunin, Federal Public Defender; Lisa A. Peebles, First Assistant Federal Public Defender), Federal Public Defenders Office, Syracuse, New York, for Defendant-Appellant.

McLAUGHLIN, Circuit Judge:

Defendant-Appellant Ross A. Fuller, III, ("Fuller") appeals from an April 2, 2009, judgment of conviction entered in the United States District Court for the Northern District of New York (Scullin, J.), following a conditional guilty plea to a violation of 18 U.S.C. § 2250, the criminal enforcement provision

2

of the federal Sex Offender Registration and Notification Act ("SORNA" or the "Act"), 42 U.S.C. § 16901 et seq. This provision "established a federal criminal offense covering, inter alia, any person who (1) 'is required to register under [SORNA],' (2) 'travels in interstate or foreign commerce,' and (3) 'knowingly fails to register or update a registration.'" Carr v. United States, 130 S. Ct. 2229, 2232 (2010) (quoting 18 U.S.C. § 2250). Fuller, who was previously convicted of a sex offense under Missouri state law and subsequently moved to New York, was arrested, indicted, and later pled guilty to failing to register as a sex offender and keep his registration current in accordance with SORNA's requirements. See 42 U.S.C. § 16913(a), (c).

Fuller's relevant interstate travel occurred in the period between SORNA's enactment on July 27, 2006, and the issuance of an interim ruling by the Attorney General on February 28, 2007, affirming SORNA's applicability to sex offenders whose predicate sex offense convictions occurred prior to SORNA's enactment (the "Interim Ruling"). See 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3 (2007)). The question before us, then, is whether SORNA applied to sex offenders in Fuller's circumstances upon its enactment or only upon issuance of the Interim Ruling. This is a question of first impression in this Circuit, and, as the Supreme Court noted in Carr while expressly declining to reach the matter, our sister Circuits are divided as

3

to the answer. See Carr, 130 S. Ct. at 2234 n.2. Today, we hold that SORNA applied upon enactment to sex offenders, like Fuller, whose predicate sex offense convictions predate SORNA.

Fuller also argues that a conviction under SORNA requires a showing of specific intent to violate the Act's requirements. We disagree, and hold that violation of SORNA's criminal enforcement provision is a general intent crime.

Therefore, the judgment of the district court is AFFIRMED.

**BACKGROUND**

On April 26, 2004, Fuller pled guilty to statutory sodomy in the second degree in Missouri. In August 2004, following his release, Fuller signed a Missouri Offender Registration Notification form, acknowledging his status as a sex offender and his continuing obligations under state law to (1) provide periodic address verifications, (2) inform law enforcement of any change of address, (3) notify law enforcement if he moved to another state, and (4) comply with the sex offender registration requirements of any state to which he moved.

From November 2004 through June 2006, Fuller complied with his address verification requirement, reporting that he resided in St. Louis, Missouri. After June 2006, however, Missouri authorities stopped receiving notice from Fuller. A warrant was thereafter issued for his arrest.

4

In September 2007, U.S. Marshals learned that Fuller was living in New York. Fuller was arrested on October 19, 2007, at which time he had failed to register as a sex offender in New York or update his registration in Missouri. He was charged in the Northern District of New York as "an individual required to register under [SORNA]" who "travel[ed] in interstate commerce and knowingly fail[ed] to register or update his registration as required by [SORNA]."

On November 21, 2007, Fuller moved to dismiss the indictment, arguing, inter alia, that (1) he was not subject to SORNA because his relevant interstate travel occurred prior to the Interim Ruling; and (2) prosecuting him under SORNA would violate the Ex Post Facto Clause. The district court denied Fuller's motion. See United States v. Fuller, No. 5:07-CR-462, 2008 WL 5600709 (N.D.N.Y. Mar. 27, 2008).

Thereafter, Fuller asked the district court to instruct the jury, in the event he went to trial, that, in order to find him guilty, it had to find that he had specific intent to violate SORNA's requirements. The district court denied the requested charge, and, instead, indicated that the jury would be given a general intent instruction, and would not be required to find that Fuller sought specifically to violate federal law.

Following the denial of his requested jury charge, Fuller pled guilty pursuant to a conditional plea agreement, which

5

preserved his right to appeal the district court's rulings. Fuller was then sentenced to time served (532 days), 10 years' supervised release, and a $100 special assessment.

**DISCUSSION**

On appeal, Fuller principally asserts that his conviction under SORNA is improper because his predicate sex offense conviction occurred prior to SORNA's enactment and his relevant interstate travel and failure to register occurred before SORNA became applicable to him as a result of the Attorney General's Interim Ruling. Fuller also argues that his conviction required a showing of specific intent to violate the Act's requirements, which the Government failed to present. These are questions of first impression in this Circuit.

**I.    SORNA's Statutory Provisions**

SORNA was enacted on July 27, 2006, to "protect the public from sex offenders" and to "establish[] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. A "sex offender" is defined as an "individual who was convicted of a sex offense," without limitation as to the time of conviction. 42 U.S.C. § 16911(1). SORNA provides criminal liability for "any person who (1) 'is required to register under [SORNA],' (2) 'travels in interstate or foreign commerce,' and (3) 'knowingly fails to register or update a registration.'" Carr, 130 S. Ct. at 2232 (quoting 18 U.S.C. § 2250).

6

SORNA's registration requirements are as follows:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--
(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913(a)-(c).

Section 16913 also grants the Attorney General certain authority with respect to sex offender registration:

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before [the enactment of SORNA on] July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Id. § 16913(d). Pursuant to this section, on February 28, 2007, the Attorney General issued an Interim Ruling concerning "whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA." 72 Fed. Reg. at 8896. The Interim Ruling stated that

> SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration.

Id. at 8895. The Attorney General made plain that the Interim Ruling was issued, not because SORNA failed to make its registration rules applicable to pre-SORNA sex offenders, but rather "to specify th[e] scope of application for SORNA, regardless of whether SORNA would apply with such scope absent th[e] rule." Id. at 8896. Thus, the Interim Ruling "foreclose[d] . . . claims [that SORNA did not apply upon enactment to pre-SORNA sex offenders] by making it indisputably clear that SORNA applies to all sex offenders . . . regardless of when they were convicted." Id.

8

In <u>Carr</u>, the Supreme Court recently held that criminal liability under SORNA "cannot be predicated on pre-SORNA travel," 130 S. Ct. at 2233, and went on to explain that "[o]nce a person becomes subject to SORNA's registration requirements, which can occur only <u>after the statute's effective date</u>, that person can be convicted under § 2250 [only] if he <u>thereafter</u> travels and then fails to register," <u>id.</u> at 2236 (emphasis added).

Accordingly, if SORNA did not apply to Fuller until the Interim Ruling, then his interstate travel would have occurred before he was "subject to SORNA's registration requirements." <u>Id.</u> If, on the other hand, Fuller became "subject to" SORNA upon its enactment, then his post-SORNA interstate travel and failure to register was unlawful irrespective of the Interim Ruling.

**II. Fuller's Challenges to SORNA**

**A. Section 16913(d)**

The principal question before us is the meaning and effect of § 16913(d) of SORNA. Section 16913(d) grants the Attorney General "the authority to specify the applicability of [SORNA's registration] requirements . . . to sex offenders convicted before [SORNA's enacment] . . . , and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with [the initial registration requirements of § 16913(b)]." 42 U.S.C. § 16913(d).

9

We review the interpretation of a federal statute de novo. See Muller v. Costello, 187 F.3d 298, 307 (2d Cir. 1999). "It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." Gozlon-Peretz v. United States, 498 U.S. 395, 404 (1991). Thus, we must determine whether § 16913(d) constitutes a clear direction by Congress to leave the determination of SORNA's applicability to pre-SORNA sex offenders solely to the Attorney General's discretion.[1]

As is always the case with statutory interpretation, our first task is "to determine whether the language at issue has a plain and unambiguous meaning." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). A particular statute's "plain meaning can best be understood by looking to the statutory scheme as a whole," United States v. Gayle, 342 F.3d 89, 93 (2d Cir. 2003), and "[t]he meaning of a particular section in a statute [should] be understood in context . . . by appreciating how sections

---

[1] Our sister Circuits have reached diverging results on the question before us. Broadly speaking, certain Circuits have held that SORNA did not apply to pre-SORNA sex offenders until the Attorney General so declared in the Interim Ruling, see, e.g., United States v. Cain, 583 F.3d 408, 414-19 (6th Cir. 2009); United States v. Hatcher, 560 F.3d 222, 226-29 (4th Cir. 2009); United States v. Madera, 528 F.3d 852, 857-59 (11th Cir. 2008), while other Circuits have held that SORNA's registration requirements applied to pre-SORNA sex offenders upon the date of enactment, see, e.g., United States v. DiTomasso, 621 F.3d 17, 25 (1st Cir. 2010); United States v. Hinckley, 550 F.3d 926, 929-35 (10th Cir. 2008); United States v. May, 535 F.3d 912, 915-19 (8th Cir. 2008).

10

relate to one another," Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 144 (2d Cir. 2002). "In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute." Id. If in taking the entire statute as a whole its plain meaning can be ascertained, "[o]ur inquiry must cease." Robinson, 519 U.S. at 340. Given the purpose and structure of SORNA, we find that § 16913(d), in the context of the statute as a whole, is ultimately susceptible to only one interpretation.

Section 16913(d) is properly construed as consisting of two separate clauses. The first clause provides that the "Attorney General shall have the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before [SORNA's enactment on] July 27, 2006." 42 U.S.C. § 16913(d). The second clause provides that "[t]he Attorney General shall have the authority . . . to prescribe rules for the registration of [sex offenders described in the first clause] and for other categories of sex offenders who are unable to comply with subsection (b) of this section." Id.

Fuller argues that the first clause is best understood to mean that "the decision whether to apply SORNA to offenders whose [predicate sex offense] convictions predated SORNA's enactment rest[s] solely with the Attorney General." Appellant's Br. 49 (emphasis added). This argument fails for at least two reasons.

11

First, we are unpersuaded that subsection (d) should be read to equate "specify" with "determine in the first instance." The language in the first clause of subsection (d) recognizes the Attorney General's authority in an already existent context. That is, in order for the Attorney General to "specify the applicability" of SORNA's registration requirements to "sex offenders convicted before [SORNA's enactment]," 42 U.S.C. § 16913(d), there must already be registration requirements applicable to pre-SORNA sex offenders that require specification.

To hold otherwise would require us to construe the Act as granting the Attorney General the power to decide whether an entire class of individuals not previously subject to criminal liability could, solely at the Attorney General's choosing, become subject to such liability. While we have already suggested that such a delegation would not necessarily be unconstitutional, see United States v. Guzman, 591 F.3d 83, 92 (2d Cir. 2010), the reasonableness of such a proposed construction still bears on our interpretation, see United States v. Hinckley, 550 F.3d 926, 948 (10th Cir. 2008) (Gorsuch, J., concurring) (urging that broad interpretation of the Attorney General's authority under § 16913(d) be rejected because such "unfettered discretion" is incompatible with the non-delegation doctrine's requirement of an "intelligible principle" to guide the exercise of delegated authority). Even if constitutionally

12

permissible, it would seem passing strange that Congress would grant the Attorney General sole authority to determine SORNA's criminal reach by cabining this expansive and profound power in a single independent clause preceding an unrelated, highly specific, and purely administrative grant of authority, located under an inapposite heading in the fourth subsection of a subchapter of the statute.[2]  See 42 U.S.C. § 16913(d).  Such a construction would, to say the least, contravene our obligation "to interpret [the] statute so as to give it reasonable meaning." United States v. Arnold, 126 F.3d 82, 89 (2d Cir. 1997).

Second, also of note about the language Congress employed in the first clause of subsection (d) is that, whatever authority it grants, it does not require that it be exercised.  See, e.g., United States v. DiTomasso, 621 F.3d 17, 24-25 (1st Cir. 2010). Thus, in order to hold that subsection (d) commits to the Attorney General the sole authority to determine SORNA's

---

[2] Subsection (d), as enacted by Congress, is entitled "Initial registration of sex offenders unable to comply with subsection (b) of this section."  Although the title of a section of a statute does not control the meaning of the text, it may nevertheless be useful in guiding our interpretation.  See Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 325 (2d Cir. 2006); see also 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:3, at 289 (7th ed. 2007) ("Where the title throws light on the meaning of the statute itself, it is an available [interpretive] tool . . . .").  While not dispositive, the title of subsection (d) supports our view that Congress did not intend to grant the Attorney General the sole power to determine SORNA's criminal scope, since we do not believe that it would have nestled such an awesome authority under so inapt a heading.

13

applicability to pre-SORNA offenders, we must also believe that Congress was indifferent as to whether the Attorney General would in fact do so.  This we cannot do.

Congress's stated purpose in enacting SORNA was to create "a comprehensive national system for the registration of [sex] offenders."  42 U.S.C. § 16901 (emphasis added).  In formulating this goal, Congress specifically noted the existence of more than 500,000 convicted sex offenders at the time of SORNA's enactment, of which as many as 150,000 were not compliant with state and federal registration requirements.  See 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch).

Given SORNA's objectives, we do not think Congress was so agnostic as to whether the half million sex offenders convicted prior to SORNA's enactment were required to comply with SORNA's registration requirements as to grant the Attorney General sole authority over that determination.  See Langhorne v. Ashcroft, 377 F.3d 175, 180 (2d Cir. 2004) ("It is axiomatic 'that . . . in interpreting legislation, we are not guided by a single sentence or member of the sentence but (rather) look to the provisions of the whole law, and to its object and policy.'" (quoting Richards v. United States, 369 U.S. 1, 11 (1962))).  Indeed, reading subsection (d) as Fuller does would undermine the entire purpose of the statute.  We agree with the view of the Attorney General, as expressed in his February 2007 Interim Ruling, that:

14

> If SORNA were deemed inapplicable to sex offenders convicted prior to its enactment, then the resulting system for registration of sex offenders would be far from "comprehensive," and would not be effective in protecting the public from sex offenders because most sex offenders who are being released into the community or are now at large would be outside of its scope . . . .

72 Fed. Reg. at 8896.

The far more reasonable interpretation of § 16913(d) is that Congress itself had already made the determination that SORNA applied to all sex offenders regardless of when convicted, and merely delegated to the Attorney General authority to work out the specific manner in which that legislative determination would be enforced with respect to pre-SORNA sex offenders, as well as those unable to comply with SORNA's initial registration rules.

The basic structure of the statute supports this reading. A "sex offender" to whom SORNA applies, for example, is defined as "an individual who was convicted of a sex offense," without any reference to the date of conviction, 42 U.S.C. § 16911(1); the general registration requirements of § 16913 also do not distinguish between sex offenders convicted before and after SORNA's enactment, rather subsections (a), (b), and (c) state simply that a "sex offender shall" register and keep his registration current, without reference to the date of conviction, id. § 16913(a)-(c); and additional ancillary sections relating to what information is required of sex offenders, the duration of the registration requirements, and the need for sex

15

offenders to comply with periodic verification procedures likewise make no distinction among sex offenders based on their date of conviction, see id. §§ 16914, 16915, 16916.

We are guided in our determination by the presumption that a law takes effect upon enactment absent a clear direction to the contrary. See Gozlon-Peretz, 498 U.S. at 404. For the reasons above, subsection (d) cannot be construed as a clear indication that Congress intended to leave SORNA's criminal reach to the discretion of the Attorney General. Cf. DiTomasso, 621 F.3d at 23 ("Subsection (d) is anything but a clear direction [that SORNA did not take effect upon enactment]."). To the contrary, in our view, the first clause of § 16913(d) constitutes a clear pronouncement by Congress of SORNA's general applicability to pre-SORNA sex offenders, while the second clause grants the Attorney General rule-making authority over two classes of sex offenders: (1) those pre-SORNA offenders addressed in the first clause——"such sex offenders"——and (2) "other categories of sex offenders" unable to comply with subsection (b). 42 U.S.C. § 16913(d) (emphasis added). In other words, § 16913(d) grants the Attorney General two separate but closely related powers: (1) the power to specify how——not whether——SORNA's registration requirements apply to the subset of sex offenders who were convicted prior to SORNA's enactment, and (2) the power to promulgate the precise registration rules applicable to that

16

subset, as well as to sex offenders unable to comply with § 16913(b) for any other reason.

Under this reading, the Attorney General's power "to specify the applicability of the requirements of [SORNA]" refers to his authority to work out the complications that may arise in the application of a new federal criminal law to an already existent class of offenders, the myriad permutations of which Congress chose not to address in the Act itself, in order to ensure an efficient and "comprehensive" national sex offender registration system. See 42 U.S.C. § 16901. For example, § 16915 concerns the duration of time for which the various classes of sex offenders defined by SORNA are required to keep their registration active, with reductions for maintaining a clean record. Under the authority granted by § 16913(d), the Attorney General could (but is not required to) elect to shorten or otherwise modify the length of time a sex offender, convicted many years before SORNA's enactment and who has exhibited good behavior, must maintain his registration. See DiTomasso, 621 F.3d at 23 ("When viewed as a part of a seamless regulatory scheme, subsection (d) . . . reflect[s] Congress's recognition that specific applications of the registration requirements to previously convicted sex offenders may have unintended consequences . . . [and thus] allows—but does not compel—the Attorney General to narrow SORNA's sweep if and to the extent

17

that he concludes that specific situations invite such narrowing.").

Although this construction admits a small degree of superfluity, such surplusage can be forgiven in light of SORNA's overarching purpose and its general structure. See Lamie v. U.S. Tr., 540 U.S. 526, 536 (2004) ("Surplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute."). After all, we are not called upon to construe Platonic forms of statutes, but real ones passed by Congress, whose intent we must respect.

In sum, "appreciating how [SORNA's] sections relate to one another," Auburn Hous. Auth., 277 F.3d at 144, and placing § 16913(d) "within the context" of SORNA as a whole, Gayle, 342 F.3d at 93, we hold that SORNA applied upon its enactment to all sex offenders regardless of when convicted, including Fuller.

**B.   General versus Specific Intent**

Fuller further argues that the district court erred in denying his requested jury charge that SORNA requires specific intent. This Court reviews jury charges de novo. See United States v. Van Buren, 599 F.3d 170, 173 (2d Cir. 2010). SORNA's criminal provision requires proof that the accused "knowingly fail[ed] to register or update a registration." 18 U.S.C. § 2250(a)(3). This Court has held that the use of "knowingly" in a statute "typically signals that the statute only requires a

18

finding of general intent for conviction." United States v. George, 386 F.3d 383, 389 n.6 (2d Cir. 2004). General intent "does not necessarily [refer] to a culpable state of mind or to knowledge of the law," rather, the term "merely requires proof of knowledge of the facts that constitute the offense." Bryan v. United States, 524 U.S. 184, 192-93 (1998).

Whether SORNA requires specific or general intent is a question of first impression in this Circuit, but every Circuit to have considered the matter has held that SORNA is a general intent crime. See, e.g., United States v. Gould, 568 F.3d 459, 468 (4th Cir. 2009) ("SORNA's criminal provision is not a specific intent law . . . [t]here is no language requiring specific intent or a willful failure to register such that [the defendant] must know his failure to register violated federal law."); United States v. Shenandoah, 595 F.3d 151, 159 (3d Cir. 2010) (same); United States v. Vasquez, 611 F.3d 325, 328-29 (7th Cir. 2010) (same).

Fuller has failed to identify any reason why the term "knowingly," as it is used in SORNA, should not be given its typical meaning of requiring only general intent. See George, 386 F.3d at 389 n.6. Because Fuller was clearly aware that he was required to register and update his registration by virtue of his voluntary agreement to and participation in Missouri's sex offender registration scheme, his failure to register upon his

19

interstate travel, with either New York or Missouri authorities, was a knowing act, see Bryan, 524 U.S. at 192-93, and was therefore sufficient to sustain the indictment for violating SORNA, see 18 U.S.C. § 2250(a); cf. Gould, 568 F.3d at 468.

### C. Fuller's Remaining Arguments

Fuller advances several additional arguments that require only brief consideration. First, he argues that his conviction violates the Ex Post Facto Clause. Since we hold that SORNA applied to Fuller upon its enactment, this argument is foreclosed. See Guzman, 591 F.3d at 94 (holding that, where a SORNA defendant's "travel and failure to register occurred after SORNA's enactment and the effective date of the [Act]," there is "no ex post facto problem" (emphasis added)).

Additionally, Fuller argues that his conviction was improper because (1) SORNA exceeds Congress's Commerce Clause authority; (2) SORNA violates the non-delegation doctrine; (3) SORNA cannot be applied to him because neither Missouri nor New York had implemented SORNA at the time of his conviction, as directed by the Act; and (4) he was never specifically notified of SORNA's requirements and applicability to him. These challenges to SORNA have been considered by this Court and rejected, see id. at 90-93; United States v. Hester, 589 F.3d 86, 92-93 (2d Cir. 2009), and thus are foreclosed on this appeal.

**CONCLUSION**

For the foregoing reasons, we conclude that Fuller's conviction under 18 U.S.C. § 2250(a) was proper. The judgment of the district court is hereby AFFIRMED.

REENA RAGGI, *Circuit Judge*, concurring:

I join in the court's opinion holding that the text and structure of the federal Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 et seq., are unambiguous in providing for SORNA's registration requirements to take effect on the date of its enactment to persons previously convicted of predicate sex offenses. I write separately only to explain that I think the alternate construction urged by defendant – identifying ambiguity as to whether § 16913(d) vests the Attorney General with authority to determine whether, and not simply how, SORNA applied to sex offenders convicted before SORNA's enactment – is, in any event, foreclosed by the rule of constitutional avoidance, as such a construction would, to my mind, raise concerns about the delegation of legislative authority to the executive branch.

1.      Constitutional Avoidance

The rule of constitutional avoidance states that "where an otherwise acceptable construction of a statute would raise serious constitutional problems," a court must "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." United States v. Magassouba, 544 F.3d 387, 404 (2d Cir. 2008) (internal quotation marks omitted). This cannon of construction is a "tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." Clark

1

v. Martinez, 543 U.S. 371, 381 (2005).[1]

2. Non-Delegation

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1 (emphasis added). Consistent with this text and the principle of separation of powers, the non-delegation doctrine generally permits "no delegation" of legislative powers to another branch of government. Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 472 (2001); see also Mistretta v. United States, 488 U.S. 361, 371-72 (1989). Among Congress's legislative powers is the authority to determine the temporal scope of a statute. See, e.g., City of New York v. Permanent Mission of India to the U.N., 618 F.3d 172, 195 (2d Cir. 2010) (recognizing Congress's "'responsibility for fundamental policy judgments concerning the proper temporal reach of statutes'" (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 273 (1994))). That determination is particularly

---

[1] Because constitutional avoidance is "a means of giving effect to congressional intent," Clark v. Martinez, 543 U.S. at 382, it assumes priority over the rule of lenity, which applies in defendant's favor "only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended," Reno v. Koray, 515 U.S. 50, 65 (1995) (citation and internal quotation marks omitted); see also United States v. Van Buren, 599 F.3d 170, 174 (2d Cir. 2010) ("[T]he Supreme Court has reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." (internal quotation marks omitted; emphasis in original)); United States v. Wu, 419 F.3d 142, 147 (2d Cir. 2005) ("The doctrine of lenity is one of last resort." (internal quotation marks omitted)). For this reason, "the rule of lenity has no application" if SORNA's meaning should turn out to be clear after considering "every indicator of statutory intent," including the doctrine of constitutional avoidance. United States v. Hinckley, 550 F.3d 926, 948 & n.8 (10th Cir. 2008) (Gorsuch, J., concurring).

significant with respect to statutes exposing persons to criminal liability.  Here, a decision as to the application of SORNA registration requirements to persons convicted of sex offenses before enactment of the statute could expand or contract the class subject to possible criminal prosecution for non-compliance by more than half a million.  See 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006) (statement of Sen. Hatch) (estimating over 500,000 persons convicted of predicate sex offenses prior to enactment of SORNA); 152 Cong. Rec. H5705, 5722 (daily ed. July 25, 2006) (statement of Rep. Sensenbrenner) (same).

In exercising legislative authority, Congress is permitted to "seek[ ] assistance, within proper limits, from its coordinate Branches."  Touby v. United States, 500 U.S. 160, 165 (1991).  To stay within constitutional limits, however, a delegation of congressional authority to a coordinate branch must "lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform."  J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928); accord Touby v. United States,  500 U.S. at 165. Put another way, a delegation is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority."  American Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946); accord Mistretta v. United States, 488 U.S. at 372-73.

In the eighty years since the Supreme Court first articulated the "intelligible principle" requirement, it has broadly construed Congress's ability to delegate power, striking down only two statutes for impermissible delegation, both in 1935.  See A.L.A. Schechter Poultry

3

Corp. v. United States, 295 U.S. 495 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388 (1935). The Court nonetheless continues to subject congressional acts of delegation to constitutional scrutiny, see, e.g., Whitman v. Am. Trucking Ass'ns, 531 U.S. 457; Touby v. United States, 500 U.S. 160, and it has frequently invoked the rule of constitutional avoidance in construing statutes to avoid serious delegation questions, see, e.g., Industrial Union Dep't, AFL-CIO v. Am. Petroleum Inst., 448 U.S. 607, 646 (1980) (rejecting interpretation of Occupational Safety and Health Act as making "such a 'sweeping delegation of legislative power' that it might be unconstitutional under the Court's reasoning in A.L.A. Schechter Poultry Corp. v. United States . . . and Panama Refining Co. v. Ryan . . . . A construction of the statute that avoids this kind of open-ended grant should certainly be favored."); see also National Cable Television Ass'n v. United States, 415 U.S. 336, 340-42 (1974); Kent v. Dulles, 357 U.S. 116, 129-30 (1958).

3.     The Delegation Concerns Raised by Defendant's Interpretation of SORNA

Title 42 U.S.C. § 16913(d) states:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Defendant argues that the first clause can be construed to empower the Attorney General to decide whether – rather than simply how – the subchapter's requirements apply to sex

4

offenders whose predicate convictions predate SORNA's enactment. I think this construction must be rejected on avoidance grounds because I do not see that Congress provided any intelligible principle in the statute to guide the Attorney General in exercising such putative delegated legislative authority.

In United States v. Guzman, 591 F.3d 83 (2d Cir. 2010), this court identified no such concern, ruling that the Attorney General's exercise of legislative authority was "highly circumscribed" by SORNA provisions identifying the crimes requiring registration, the "where, when, and how" of registration, the information required of registrants, and the elements and penalties for the federal crime of failure to register. Id. at 93 (citing 42 U.S.C. §§ 16911, 16913-14, 18 U.S.C. § 2250).[2] Guzman also observed that the Attorney General's power under § 16913(d) would extend only "to the limited class of individuals who were convicted of covered sex offenses prior to SORNA's enactment; the Attorney General cannot do much more than simply determine whether or not SORNA applies to those individuals." Id.

In reaching the same conclusion, a panel of the Eleventh Circuit relied upon the detailed statutory specifications identified in Guzman, and also noted that "Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d)," by building the following statement of legislative

---

[2] United States v. Guzman did not conclusively construe the first clause of § 16913(d), concluding that regardless of whether it confers broad or narrow authority, it is a permissible delegation that satisfies the "intelligible principle" test. See 591 F.3d at 92-93.

5

purpose into the statute: "'In order to protect the public from sex offenders and offenders against children, . . . Congress in this chapter establishes a comprehensive national system for the registration of those offenders.'" United States v. Ambert, 561 F.3d 1202, 1213-14 (11th Cir. 2009) (quoting 42 U.S.C. § 16901).

I agree that the SORNA provisions cited in Guzman and Ambert indicate how persons to whom the statute applies may satisfy its requirements or be prosecuted for failing to do so. But I respectfully fail to see what guidance these provisions provide to the Attorney General in exercising legislative authority to decide whether or not SORNA's registration requirements should apply to prior offenders at all. See, e.g., United States v. Madera, 528 F.3d 852, 858 (11th Cir. 2008) (adopting broad interpretation of § 16913(d)'s delegation, and noting Attorney General's "unfettered discretion to determine both how and whether SORNA was to be retroactively applied" (first emphasis added)). Nor does the statutory purpose of creating a "comprehensive national system" for registration, 42 U.S.C. § 16901; see United States v. Ambert, 561 F.3d at 1213-14, hint as to what factors, if any, might counsel against applying the Act's registration requirements to prior offenders. The Attorney General could simply flip a coin, and thereby make the more than 500,000 persons convicted of sex offenses before July 27, 2006, subject to SORNA's registration requirements – or not. I am not alone in noting such a delegation concern with the construction of § 16913(d) urged by defendant:

> Without any discernible principle to guide him or her in the statute, the Attorney General could, willy nilly, a) require every single one of the estimated half million sex offenders in the nation to register under SORNA, b) through inaction, leave each

6

of those half million offenders exempt from SORNA, c) do anything in between those two extremes, or d) change his or her mind on this question, making the statute variously prospective and retroactive, as administrative agencies are normally entitled to do when Congress delegates interpretive questions to them.

United States v. Hinckley, 550 F.3d 926, 948 (10th Cir. 2008) (Gorsuch, J., concurring) (citation omitted).

I do not think these concerns are dispelled by the fact that the Attorney General's authority under § 16913(d) would apply only "to a particular, capped class of offenders." United States v. Ambert, 561 F.3d at 1214; see also United States v. Guzman, 591 F.3d at 93 (noting authority applies only to "limited class of individuals"). A delegation of authority to determine the potential criminal exposure of half a million people cannot be deemed narrow. In any event, the non-delegation doctrine requires, not that the delegated authority be narrow in the scope of its application, but rather that Congress provide an "intelligible principle" to guide its exercise. I do not think SORNA provides such a principle.

The identified constitutional concern with defendant's construction of § 16913(d) is further aggravated by the fact that it presumes that Congress, without providing any meaningful guidance, delegated to the Attorney General, the very officer charged with executive power to enforce the criminal laws, the legislative power unilaterally to pronounce the scope of a law with criminal consequences. Cf. Buckley v. Valeo, 424 U.S. 1, 139 (1976) ("Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The

7

latter are executive functions." (internal quotation marks omitted)); Mistretta v. United States, 488 U.S. at 391 n.17 (recognizing that uniting power to prosecute and power to sentence in executive would raise constitutional concerns). This I expect is why the Supreme Court has suggested, even if not decided, that "greater congressional specificity" might be required of delegations in the criminal context. Touby v. United States, 500 U.S. at 165-66; see also United States v. Dhafir, 461 F.3d 211, 216 (2d Cir. 2006). Unlike the delegation of legislative authority implicit in defendant's urged construction, delegations that have previously been upheld in the criminal context have been accompanied by rigorous, "meaningful constraints" not only on the scope of the delegated authority, but also on the manner of its exercise. Touby v. United States, 500 U.S. at 166 (upholding delegation where Attorney General was required, inter alia, to determine exercise of authority was "'necessary to avoid an imminent hazard to the public safety'" (quoting 21 U.S.C. § 811(h)(1)));[3] see also United States v. Dhafir, 461 F.3d at 216 (upholding delegation where "'the authorities

---

[3] In Touby, Congress had delegated authority to the Attorney General to schedule a substance as "controlled" on a temporary basis, pending completion of the requirements for permanent scheduling. See Touby v. United States, 500 U.S. at 162-64. Petitioners, who had been convicted of manufacturing a temporarily scheduled drug, conceded that Congress had set out an "intelligible principle" to guide exercise of the Attorney General's discretion, but argued "that something more than an 'intelligible principle' is required when Congress authorizes another Branch to promulgate regulations that contemplate criminal sanctions." Id. at 165-66. The Court found it unnecessary to decide this issue, holding that the delegation "passes muster even if greater congressional specificity is required in the criminal context," because the statute "meaningfully constrains the Attorney General's discretion" by requiring a number of findings in support of a temporary scheduling, including that it be "'necessary to avoid an imminent hazard to the public safety.'" Id. at 166 (quoting 21 U.S.C. § 811(h)(1)).

8

granted to the President . . . may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared'" (brackets omitted) (quoting 50 U.S.C. § 1701(b))).[4]

In sum, while Guzman plainly controls our review, I continue to have reservations concerning the substantial delegation concerns raised by defendant's proposed interpretation of SORNA. The court conclusively eliminates these concerns today by answering the question left open in Guzman, holding that the text and structure of the statute clearly do not support defendant's construction and, in fact, signal Congress's clear intent for SORNA's registration requirements to take effect on the date of its enactment even as to persons previously convicted of predicate sex offenses. I note simply that even if we had identified any statutory ambiguity, the rule of constitutional avoidance would further prompt me to construe § 16913(d) as the court does today to avoid possible constitutional infirmities in defendant's construction. See, e.g., Clark v. Martinez, 543 U.S. at 381 (describing constitutional avoidance as "tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"); see also United States v. Hinckley,

---

[4] At issue in Dhafir was a delegation of authority to the President in the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., to issue regulations, the violation of which triggered criminal penalties, in response to declared international threats. See United States v. Dhafir, 461 F.3d at 213. We held that the IEEPA constrained the President's exercise of such authority in a manner comparable to Touby and, further, that the statute related to foreign affairs, "an area in which the President has greater discretion" because of the authority vested exclusively in the executive by Article II. Id. at 216-17.

550 F.3d at 948 (Gorsuch, J., concurring) ("The Supreme Court tells us that we ought to construe statutes to avoid problems of potential constitutional dimension when a plausible alternative interpretation exists. And plainly a reasonable alternative [interpretation of § 16913(d)] exists in this case far more consonant with every indicator of congressional intent." (citation omitted)). Thus, that rule only reinforces my decision to affirm.